ORIGINAL

Approved: *Mitzi Steiner*
MITZI S. STEINER / MICAH FERGENSON
Assistant United States Attorney

Before:   THE HONORABLE JAMES L. COTT
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

   - v. -

JOSE IRIZARRY,
    a/k/a "JD Po,"
    a/k/a "Freddy Parra,"

                Defendant.

- - - - - - - - - - - - - - - - x

**22 MAG 5751**

**COMPLAINT**

Violation of
21 U.S.C. § 846

COUNTY OF OFFENSE:
NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

FRANCIS CONEJO, being duly sworn, deposes and says that he is a Detective with the New York City Police Department (the "NYPD"), and charges as follows:

### COUNT ONE
### (Narcotics Conspiracy)

1.    Between in or about April 2021 and in or about December 2021, in the Southern District of New York and elsewhere, JOSE IRIZARRY, a/k/a "JD Po," a/k/a "Freddy Parra," the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

2.    It was a part and an object of the conspiracy that JOSE IRIZARRY, a/k/a "JD Po," a/k/a "Freddy Parra," the defendant, and others known and unknown, would and did distribute and possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

3.    The controlled substances that JOSE IRIZARRY, a/k/a "JD Po," a/k/a "Freddy Parra," the defendant, conspired to distribute and to possess with intent to distribute, were (i) 10

grams and more of mixtures and substances containing a detectable amount of a fentanyl analogue, in violation of Title 21, United States Code, Section 841(b)(1)(B); (ii) a quantity of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(C); (iii) a quantity of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(C); and (iv) a quantity of mixtures and substances containing a detectable amount of Oxycodone, in violation of Title 21, United States Code, Section 841(b)(1)(C).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

4. I am a Detective with the NYPD, and I have been personally involved in this investigation. This affidavit is based on my investigation, my conversations with other law enforcement officers and other individuals, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5. Based on my training and experience, my participation in this investigation, including my personal observations, my conversations with an undercover law enforcement officer (the "UC") and other law enforcement agents, including consensual video and audio recordings of at least some of the communications described below, my review of law enforcement reports and records, and my review of other materials specified below, I have learned, among other things, that between in or about April 2021 and in or about December 2021, JOSE IRIZARRY, a/k/a "JD Po," a/k/a "Freddy Parra," the defendant, sold narcotic substances to the UC on approximately twenty occasions. Prior to each narcotics transaction, IRIZARRY informed the UC that IRIZARRY would be providing the UC with quantities of cocaine, heroin,[1]

---

[1] Based on my training and experience, and my involvement in this investigation, I know that IRIZARRY and the UC also used the terms "dog food" and "dope" to refer to heroin.

2

and/or Oxycodone,[2] when, in fact, the substances provided by IRIZARRY also tested positive for, among other things, fentanyl and para-fluorofentanyl, a fentanyl analogue. In exchange, the UC provided IRIZARRY with hundreds of dollars in pre-recorded money. For example, I have learned, among other things, the following:

      a. On or about April 15, 2021, the UC met with IRIZARRY in the vicinity of West 162nd Street between Broadway Avenue and St. Nicholas Avenue in New York, New York (the "Location") for the purpose of conducting a narcotics transaction. Specifically, IRIZARRY agreed to sell the UC sample quantities of cocaine, heroin, and Oxycodone, in exchange for which the UC provided IRIZARRY with $120 of pre-recorded money. The substances were subsequently lab tested and tested positive for the presence of cocaine, oxycodone, fentanyl, and para-fluorofentanyl.

      b. On or about September 1, 2021, the UC met with IRIZARRY in the vicinity of the Location for the purpose of conducting a narcotics transaction. Specifically, IRIZARRY agreed to sell the UC nine Ziplock bags of heroin and two Oxycodone pills, in exchange for which the UC provided IRIZARRY with $140 of pre-recorded money. The substances were subsequently lab tested and tested positive for the presence of, among other things, heroin, oxycodone, fentanyl, and para-fluorofentanyl.

      c. On or about September 14, 2021, the UC exchanged a call with a phone number (the "Phone Number"), which had previously been provided by IRIZARRY to the UC as IRIZARRY's personal phone number. During the call, among other things, IRIZARRY agreed to sell the UC 15 bags of heroin. The UC soon thereafter met with IRIZARRY in the vicinity of the Location for the purpose of conducting the narcotics transaction. IRIZARRY provided the UC with 15 paper folds, in exchange for which the UC provided IRIZARRY with $150 of pre-recorded money. A sample of the substances in the paper folds was subsequently lab tested and tested positive for the presence of fentanyl.

      d. On or about September 17, 2021, the UC exchanged a call with IRIZARRY through the Phone Number. During the call, among other things, IRIZARRY agreed to sell the UC a quantity of heroin. The UC soon thereafter met with IRIZARRY in the vicinity of the Location for the purpose of conducting the narcotics transaction. The UC informed IRIZARRY that the UC wished to

---

[2] Based on my training and experience, and my involvement in this investigation, I know that IRIZARRY and the UC also used the terms "percs" and "yellows" to refer to Oxycodone.

purchase "thirty." IRIZARRY provided the UC with thirty paper folds, in exchange for which the UC provided IRIZARRY with $200 of pre-recorded money. A sample of the substances in the paper folds was subsequently lab tested and tested positive for the presence of fentanyl.

   e. On or about September 29, 2021, the UC exchanged a call with IRIZARRY through the Phone Number. During the call, among other things, IRIZARRY agreed to sell the UC "twenty," which based on my training an experience, and involvement in this investigation, I understand to refer to twenty portions of heroin. The UC soon thereafter met with IRIZARRY in the vicinity of the Location for the purpose of conducting the narcotics transaction. IRIZARRY provided the UC with twenty glassines, in exchange for which the UC provided IRIZARRY with $200 of pre-recorded money. A sample of the substances in the glassines was subsequently lab tested and tested positive for the presence of fentanyl.

   f. On or about October 7, 2021, the UC exchanged a call with IRIZARRY through the Phone Number. During the call, among other things, IRIZARRY agreed to sell the UC "twenty" and "ten yellows," which based on my training an experience I understand to refer to twenty portions of heroin and ten Oxycodone pills. The UC soon thereafter met with IRIZARRY in the vicinity of the Location for the purpose of conducting the narcotics transaction. IRIZARRY provided the UC with 20 Ziplock bags of heroin and 10 Oxycodone pills, in exchange for which the UC provided IRIZARRY with $400 of pre-recorded money. A sample of the substances in the bags and pills was subsequently lab tested and tested positive for the presence of, among other things, heroin, oxycodone, fentanyl, and para-fluorofentanyl.

   g. Between on or about October 8, 2021 and on or about November 30, 2021, the UC met with IRIZARRY for the purpose of conducting a narcotics transaction on at least nine occasions. Specifically, prior to each meeting, the UC and IRIZARRY communicated regarding the narcotics transaction through the Phone Number. IRIZARRY agreed to sell the UC a quantity of heroin on each occasion. The UC subsequently met with IRIZARRY in the vicinity of the Location for the purpose of conducting the narcotics transaction, where IRIZARRY provided the UC with the agreed upon quantity of heroin, in exchange for which the UC provided IRIZARRY with pre-recorded money. A sample of each of the substances provided by IRIZARRY were subsequently lab tested and tested positive for the presence of, among other things, heroin, oxycodone, fentanyl, and para-fluorofentanyl. A summary of these narcotics transactions is reflected in the chart below:

| Date of Transaction | Quantity of heroin IRIZARRY agreed to sell the UC | Amount of pre-recorded money provided by the UC to IRIZARRY |
|---|---|---|
| 10/8/21 | 20 Zips of heroin | $200 |
| 10/12/21 | 15 Zips of heroin | $150 |
| 10/20/21 | 20 Zips of heroin | $200 |
| 10/22/21 | 16 Zips of heroin | $160 |
| 11/5/21 | 30 zips of heroin | $300 |
| 11/13/21 | "35"[3] | $350 |
| 11/16/21 | "50"[4] | $500 |
| 11/18/21 | "400"[5] | $400 |
| 11/30/21 | "400" | $400 |

   h. On or about December 3, 2021, the UC exchanged a call with IRIZARRY through the Phone Number. During the call, among other things, IRIZARRY agreed to sell the UC "ten," which based on my training an experience, and involvement in this investigation, I understand to refer to ten grams of heroin. The UC soon thereafter met with IRIZARRY in the vicinity of the Location for the purpose of conducting the narcotics transaction. IRIZARRY provided the UC with a clear twist, in exchange for which the UC provided IRIZARRY with $550 of pre-recorded money. A sample of the substances in the clear twist was subsequently lab tested and tested positive for the presence of heroin and fentanyl.

   i. On or about December 7, 2021, the UC exchanged a call with IRIZARRY through the Phone Number. During the call, among other things, IRIZARRY agreed to sell the UC "ten," which based on my training an experience and involvement in this investigation, I understand to refer to ten grams of heroin. The UC soon thereafter met with IRIZARRY in the vicinity of the Location for the purpose of conducting the narcotics transaction. IRIZARRY informed the UC that another individual (the "CC") would be arriving soon to complete the transaction. The CC approached the UC shortly thereafter, and the CC provided the UC with, among other things, a clear twist, in exchange for which the UC provided IRIZARRY with pre-recorded money. A sample of the substances in the clear twist was subsequently lab tested and tested positive for the presence of fentanyl.

---

[3] Based on my training and experience, and involvement in this investigation, I understand "35" to refer to $350 worth of heroin.
[4] Based on my training and experience, and involvement in this investigation, I understand "50" to refer to $500 worth of heroin.
[5] Based on my training and experience, and involvement in this investigation, I understand "400" to refer to $400 worth of heroin.

6. Based on my review of lab reports prepared during this investigation, I know that, in total, JOSE IRIZARRY, a/k/a "JD Po," a/k/a "Freddy Parra," the defendant, provided the UC with, among other things, 19.6 grams of para fluorofentanyl.

7. Based on my review of law enforcement records, I know that on or about July 27, 2021, the UC was shown a photo array of individuals and identified JOSE IRIZARRY, a/k/a "JD Po," a/k/a "Freddy Parra," the defendant, as the individual with whom he conducted the aforementioned narcotics transactions.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of JOSE IRIZARRY, a/k/a "JD Po," a/k/a "Freddy Parra," the defendant, and that he be imprisoned or bailed, as the case may be.

/s/ Francis Conejo, by the Court, with permission
_____
FRANCIS CONEJO
Detective
NYPD

Sworn to me through the transmission of this Complaint by reliable electronic means, pursuant to Federal Rules of Criminal Procedure 41(d)(3) and 4.1, this

12th day of July, 2022

_____
JAMES L. COTT
United States Magistrate Judge